E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SARAH SPIELBERGER (Cal. Bar No. 311175)
ALEXANDRA MICHAEL (Cal. Bar No. Pending)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3756/3358
    Facsimile: (213) 894-0141
    E-mail:   sarah.spielberger@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cr-00429-JFW-5 |
|---|---|
|      Plaintiff, | PLEA AGREEMENT FOR DEFENDANT SAULO SOLARES |
|         v. | |
| CARLOS CORONA, et al., | |
|      Defendants. | |

    1.   This constitutes the plea agreement between SAULO SOLARES ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.   Defendant agrees to/that:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the

*WP 4/23/24*

indictment in <u>United States v. CARLOS CORONA, et al.</u>, No. 2:23-cr-00429-JFW-5, which charges defendant with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349.

        b.   Not contest facts agreed to in this agreement.

        c.   Abide by all agreements regarding sentencing contained in this agreement.

        d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

        h.   Any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

        i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

3

NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, Conspiracy to Commit Bank Fraud, in violation of Title 18, United States Code, Section 1349, the following must be true:

a.   First, beginning no later than October 14, 2020, and continuing through at least August 18, 2023, there was an agreement between two or more persons to commit Bank Fraud, in violation of Title 18, United States Code, Section 1344(1);

b.   Second, defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c.   Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

5.   Defendant understands that for an individual to be guilty of Bank Fraud, in violation of Title 18, United States Code, Section 1344(1), the following must be true:

a.   First, the individual knowingly executed or attempted to execute a scheme to defraud a financial institution of something of value;

b.   Second, that the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

c.   Third, the individual did so with the intent to defraud the financial institution; and

d.   Fourth, the financial institution was insured by the Federal Deposit Insurance Corporation.

4

A "scheme to defraud" means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat, in other words to deprive the victim of money or property by means of deception.  It is not necessary for the government to prove that a financial institution was the only or sole victim of the scheme to defraud.  It is also not necessary for the government to prove that the individual was actually successful in defrauding any financial institution.  Finally, it is not necessary for the government to prove that any financial institution lost any money or property as a result of the scheme to defraud.

An "intent to defraud" means to act willfully and with the specific intent to deceive and cheat.

<u>PENALTIES AND RESTITUTION</u>

6.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years' imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.  Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses

suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $2,722,632.52, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a

1  professional license.  Defendant understands that unanticipated

2  collateral consequences will not serve as grounds to withdraw

3  defendant's guilty plea.

4    10.  Defendant and his counsel have discussed the fact that, and

5  defendant understands that, if defendant is not a United States

6  citizen, the conviction in this case makes it practically inevitable

7  and a virtual certainty that defendant will be removed or deported

8  from the United States.  Defendant may also be denied United States

9  citizenship and admission to the United States in the future.

10  Defendant understands that while there may be arguments that

11  defendant can raise in immigration proceedings to avoid or delay

12  removal, removal is presumptively mandatory and a virtual certainty

13  in this case.  Defendant further understands that removal and

14  immigration consequences are the subject of a separate proceeding and

15  that no one, including his attorney or the Court, can predict to an

16  absolute certainty the effect of his conviction on his immigration

17  status.  Defendant nevertheless affirms that he wants to plead guilty

18  regardless of any immigration consequences that his plea may entail,

19  even if the consequence is automatic removal from the United States.

20  <u>FACTUAL BASIS</u>

21    11.  Defendant admits that defendant is, in fact, guilty of the

22  offense to which defendant is agreeing to plead guilty.  Defendant

23  and the USAO agree to the statement of facts provided below and agree

24  that this statement of facts is sufficient to support a plea of

25  guilty to the charge described in this agreement and to establish the

26  Sentencing Guidelines factors set forth in paragraph 13 below but is

27  not meant to be a complete recitation of all facts relevant to the

28

1  underlying criminal conduct or all facts known to either party that
2  relate to that conduct.

3       a.  Beginning no later than October 14, 2020, and
4  continuing through at least August 18, 2023, in Los Angeles County
5  and Orange County, within the Central District of California, and
6  elsewhere, defendant conspired and agreed with co-defendants CARLOS
7  CORONA, JOSE LUIS EDEZA JR., JOHN WESLEY BESS JR., RICARDO OCHOA JR.,
8  CARLOS LUIZ ARELLANO, SOFIA GENESIS ALVAREZ, KAREN VANESSA MARTINEZ,
9  VANESSA CORTES ARZATE, and RICARDO WILFREDO NICHOLSON (collectively,
10  the "CO-CONSPIRATORS"), to knowingly and intentionally commit bank
11  fraud.  Specifically, defendant and the CO-CONSPIRATORS agreed to
12  knowingly execute a scheme to fraudulently obtain money owned by Bank
13  of America, N.A. ("BOA"), Citibank, N.A. ("Citi"), Wells Fargo, N.A.
14  ("WFB"), JP Morgan Chase Bank ("Chase"), U.S. Bancorp ("USB"),
15  Kinecta Federal Credit Union ("Kinecta"), Navy Federal Credit Union
16  ("NFCU"), and SchoolsFirst Federal Credit Union ("SchoolsFirst")
17  (collectively, the "Financial Institutions"), through materially
18  false and fraudulent pretenses, representations, and promises.
19  Defendant joined this conspiracy knowing of this object and intending
20  to help accomplish it.

21       b.  At all times during the conspiracy, BOA, Citi, WFB,
22  Chase, USB, Kinecta, NFCU, and SchoolsFirst were financial
23  institutions insured by the Federal Deposit Insurance Corporation
24  ("FDIC").

25       c.  In furtherance of the conspiracy, defendant and others
26  stole checks from the U.S. mail, including from mailboxes and post
27  office mail collection boxes located outside of U.S. Post Office
28  locations.  Co-defendants CORONA, EDEZA, BESS, and OCHOA, and other

1  co-conspirators, would then take possession of the checks that

2  defendant and others stole.

3          d.   In furtherance of the conspiracy, co-defendants

4  CORONA, EDEZA, BESS, OCHOA, ARELLANO, ALVAREZ, MARTINEZ, CORTES

5  ARZATE, and NICHOLSON, and other co-conspirators, solicited bank

6  account holders through social media to provide their debit cards and

7  bank account information to defendant and his co-conspirators.  In

8  return, defendant's co-conspirators promised these account holders a

9  cut of any fraudulent funds deposited into their accounts.  To

10  circumvent the fraud protections of the Financial Institutions,

11  defendant's co-conspirators specifically requested bank accounts that

12  had been open for a certain amount of time so that they could get

13  access to the stolen funds more quickly.  Once bank account holders

14  responded to the advertisements via social media and provided the

15  information requested in the advertisements, including bank account

16  numbers, PIN numbers, and online banking log-in information, co-

17  defendants CORONA, EDEZA, BESS, OCHOA, ARELLANO, ALVAREZ, MARTINEZ,

18  CORTES ARZATE, and NICHOLSON also took physical possession of the

19  account holders' debit cards.  Defendant's co-conspirators then

20  exchanged the debit cards and bank account information obtained from

21  the bank account holders with each other.

22          e.   In furtherance of the conspiracy, co-defendants

23  CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, deposited

24  the stolen checks into the bank accounts that had been sourced by

25  defendant and other co-conspirators.  In most cases, the stolen

26  checks were falsely endorsed in the original payee's name.  In doing

27  so, the co-conspirators falsely represented that they were the payees

28  on the checks and were entitled to the funds and concealed that they

were not the payees on the stolen checks and that they were not authorized to deposit the checks or receive the payees' funds.  In some cases, the checks were washed or altered to make the payee the name of the owner of the bank account into which the checks were being deposited.

f.   In furtherance of the conspiracy, after the stolen checks were deposited into the bank accounts described above, co-defendants CORONA, EDEZA, BESS, and OCHOA, and other co-conspirators, rapidly depleted the fraudulently deposited funds from the account holders' accounts by making cash withdrawals, electronic transfers, and/or debit card purchases.

g.   Throughout the course of the conspiracy, to conceal the fraud, defendant's co-conspirators instructed account holders to claim that their accounts had been compromised if contacted by the Financial Institutions about the fraudulent deposits.

h.   Also in furtherance of the conspiracy, defendant and his co-conspirators committed at least the following acts:

i.   On January 19, 2021, defendant stole mail from a United States Postal Service ("USPS") collection box outside the Eagle Rock Post Office in Los Angeles, California.

ii.   On February 16, 2021, defendant stole mail from a USPS collection box at the Griffith Post Office in Los Angeles, California.

iii. On February 17, 2021, in response to co-defendant CORONA's Instagram direct message asking for washed checks, defendant confirmed he had "a lot."

iv.   On February 21, 2021, in Instagram direct messages, defendant sent co-defendant CORONA four photographs

depicting approximately 23 stolen checks.

v.   On February 27, 2021, defendant told co-defendant CORONA over Instagram direct message that defendant was going to fish for checks in the mail that evening.

vi.   On February 28, 2021, in response to defendant's Instagram direct message with a photograph depicting ten stolen checks, including check no. 1192 addressed to R.A., co-defendant CORONA arranged for a co-conspirator to get eight of the checks from defendant, including check no. 1192.

vii. On March 4, 2021, using Instagram direct messages, co-defendant CORONA told defendant that the last checks from defendant did not work and arranged to get additional stolen checks from defendant.

viii.   On March 16, 2021, in response to co-defendant CORONA's Instagram direct message asking defendant if he had Chase checks, defendant said that he had washed checks and that he was in the alley.

ix.   On March 17, 2021, defendant stole mail from a USPS collection box at the Griffith Post Office located in Los Angeles, California.

x.   On March 17, 2021, using Instagram direct messages, defendant and co-defendant CORONA arranged to meet so that defendant could hand off stolen checks to co-defendant CORONA.

xi.   On March 20, 2021, defendant stole mail from a USPS collection box at the Griffith Post Office in Los Angeles, California.

xii. On March 23, 2021, in response to defendant's Instagram direct message with a photograph depicting approximately

eight stolen checks, co-defendant CORONA arranged to meet defendant.

xiii.    On March 29, 2021, in response to co-defendant CORONA's Instagram direct message that he needed washed checks, defendant sent a photograph depicting approximately 22 stolen checks.

xiv. On April 2, 2021, in response to defendant's Instagram direct message sending a photograph depicting approximately 14 stolen checks, co-defendant CORONA arranged to meet defendant.

xv.  On April 11, 2021, using Instagram direct messages, co-defendant CORONA agreed to lend defendant a car so that defendant could go "fishing" and steal checks from the U.S. mail.

xvi. On April 21, 2021, in response to defendant's Instagram direct message that he was going to go fishing that night and give stolen checks to co-defendant OCHOA, co-defendant OCHOA told defendant to reach out to him in the morning.

xvii.    On May 6, 2021, in response to co-defendant OCHOA's Instagram direct message that he needed stolen checks, defendant said he was going to go "fishing."

xviii.    On June 17, 2021, in response to defendant's Instagram direct messages with two photographs depicting approximately 11 stolen checks, co-defendant OCHOA arranged to meet defendant.

xix. On June 28, 2021, defendant sent co-defendant CORONA an Instagram direct message that defendant was going to go fishing for checks in the mail and give the checks to co-defendant CORONA.

xx.  On August 11, 2021, defendant possessed approximately 34 pieces of stolen mail.

1          xxi. On August 29, 2021, in response to defendant's

2  Instagram direct messages with three photographs depicting

3  approximately 29 stolen checks, co-defendant OCHOA said he needed the

4  WFB checks and arranged to meet defendant.

5          xxii.   On September 24, 2021, in response to

6  defendant's Instagram direct message asking if co-defendant BESS

7  needed stolen checks in amounts over $20,000, co-defendant BESS

8  confirmed that he did.

9          xxiii.   On September 28, 2021, in response to

10  defendant's Instagram direct message with two photographs depicting

11  approximately 19 stolen checks, including checks issued by the United

12  States and the State of California, co-defendant BESS said he wanted

13  the "state checks."

14          xxiv.   On October 23, 2021, in response to

15  defendant's Instagram direct message that said "bangers alert" with

16  two photographs depicting approximately 11 stolen checks, co-

17  defendant OCHOA arranged to meet defendant.

18  **Accountholder E.P. (WFB Account 6740)**

19          xxv. On February 28, 2021, using Instagram direct

20  messages, defendant and co-defendant CORONA arranged for a co-

21  conspirator to get stolen checks from defendant to give to co-

22  defendant CORONA, which included check no. 1162 from B.A.P. payable

23  to R.A. in the amount of $6,767.

24          xxvi.   On March 3, 2021, in response to co-

25  defendant MARTINEZ's Instagram direct message stating that she was

26  going to bring debit cards to him, co-defendant CORONA confirmed he

27  was around.

28          xxvii.   On March 3, 2021, co-defendant MARTINEZ

1  delivered WFB Card 4140 to co-defendant CORONA.

2           xxviii.   On March 3, 2021, using Instagram direct
3  messages, co-defendant MARTINEZ sent co-defendant CORONA the name of
4  E.P., "Wells," and the four-digit PIN number for WFB Card 4140.

5           xxix.    On March 3, 2021, co-defendant CORONA caused
6  check no. 1162 from B.A.P. payable to R.A. in the amount of $6,767 to
7  be deposited into WFB Account 6740 using WFB Card 4140 at an ATM in
8  Compton, California.

9           xxx. On March 4, 2021, in response to co-defendant
10  MARTINEZ's Instagram direct message requesting it, co-defendant
11  CORONA sent a photograph depicting an ATM receipt documenting the
12  deposit of check no. 1162.

13           xxxi.    On March 9, 2021, using Instagram direct
14  messages, co-defendant MARTINEZ sent co-defendant CORONA a screenshot
15  from the WFB app showing that WFB Account 6740 had a balance of
16  $6,761.57.

17           i.   Defendant admits that by engaging in the conduct and
18  acts described above: (1) he knowingly executed and participated in a
19  scheme to defraud the Financial Institutions of money; and (2) he did
20  so with the intent to defraud the Financial Institutions.  Defendant
21  also admits that by engaging in the conduct and acts described above,
22  his co-conspirators unlawfully obtained money from the Financial
23  Institutions through false and fraudulent pretenses, statements, and
24  representations, which had the natural tendency to influence the
25  Financial Institutions to part with money.

26           j.   Defendant admits that over the course of the
27  conspiracy, he and his co-conspirators: (1) attempted and intended to
28  cause a loss of at least $5,392,100.17 to several of the Financial

Institutions; and (2) caused an actual loss of $2,722,632.52 to WFB. Defendant further admits it was reasonably foreseeable to him that all of this loss was a potential result of the above-described bank fraud conspiracy.

k.   Defendant admits that he and his co-conspirators caused monetary losses to at least 10 victims, including the Financial Institutions.

SENTENCING FACTORS

12.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| More than $3.5 Million of Loss: | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| 10 or More Victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under

the Sentencing Guidelines are appropriate.

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

16

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

18.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $2,722,632.52; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised

release imposed by the Court: the conditions set forth in Second
Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.  The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment within or above the
range corresponding to an offense level of 24 and the criminal
history category calculated by the Court.  The USAO gives up its
right to appeal any portion of the sentence, with the exception that
the USAO reserves the right to appeal the following: (a) the amount
of restitution ordered if that amount is less than $2,722,632.52.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.  Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty plea on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

21.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

1        a.   Defendant agrees that any applicable statute of

2   limitations is tolled between the date of defendant's signing of this

3   agreement and the filing commencing any such action.

4        b.   Defendant waives and gives up all defenses based on

5   the statute of limitations, any claim of pre-indictment delay, or any

6   speedy trial claim with respect to any such action, except to the

7   extent that such defenses existed as of the date of defendant's

8   signing this agreement.

9        c.   Defendant agrees that: (i) any statements made by

10  defendant, under oath, at the guilty plea hearing (if such a hearing

11  occurred prior to the breach); (ii) the agreed to factual basis

12  statement in this agreement; and (iii) any evidence derived from such

13  statements, shall be admissible against defendant in any such action

14  against defendant, and defendant waives and gives up any claim under

15  the United States Constitution, any statute, Rule 410 of the Federal

16  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

17  Procedure, or any other federal rule, that the statements or any

18  evidence derived from the statements should be suppressed or are

19  inadmissible.

20        COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

21                        OFFICE NOT PARTIES

22      25.  Defendant understands that the Court and the United States

23  Probation and Pretrial Services Office are not parties to this

24  agreement and need not accept any of the USAO's sentencing

25  recommendations or the parties' agreements to facts or sentencing

26  factors.

27      26.  Defendant understands that both defendant and the USAO are

28  free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 13 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional

21

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4      29.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 E. MARTIN ESTRADA
   United States Attorney

11

12 *Sarah E. Spielberger*                    April 23, 2024
   SARAH E. SPIELBERGER                      Date
13 Assistant United States Attorney

14                                           5/2/24
   SAULO SOLARES                             Date
15 Defendant

16                                           5/2/2024
   DAVID R. EVANS                            Date
17 Attorney for Defendant SAULO
   SOLARES
18

19

20 ///

21 ///

22 ///

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          5/2/24
SAULO SOLARES                             Date
Defendant

///

///

///

23

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am SAULO SOLARES's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          5/2/2024
DAVID R. EVANS                            Date
Attorney for Defendant SAULO
SOLARES

24